**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-cr-00221-CRC** |
| | ) | |
| **NICHOLAS VON KEUDELL,** | ) | |
| | ) | |
| | ) | |
| **Defendant** | ) | |
| | ) | |


**DEFENDANT NICHOLAS VON KEUDELL'S SENTENCING STATEMENT**


William L. Shipley, Jr., Esq.
PO Box 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com

*Attorney for Defendant*

I.        Introduction

Comes now Defendant Nicholas Von Keudell by and through his undersigned counsel of record, William L. Shipley Esq., and submits to this Court his Sentencing Statement in advance of the Sentencing Hearing on April 2, 2024.

Defendant Von Keudell appears for sentencing before this Court having pled guilty to Counts Three and Four of the Indictment, charging him with a violation of, 40 U.S.C. 5104(e)(2)(D); Violent Entry And Disorderly Conduct On Capitol Grounds; Disorderly Conduct in a Capitol Building, and 40 U.S.C. 5104(e)(2)(G); Violent Entry And Disorderly Conduct On Capitol Grounds; Parading, Demonstrating, or Picketing in a Capitol Building.

Defendants faces a statutory maximum penalty of up to 6 months imprisonment and a fine up to $5,000 on each count.

The Probation Officer has recommended a sentence of 24 months of probation and a fine of $2000.

Defendant Von Keudell concurs with the recommendation in all respects except one – Defendant Von Keudell believes a term of probation of 24 months and a term of "community service" rather than the recommended fine is sufficient to meet all the goals of sentencing set forth in Sec. 3553a.

Sentencing Guidelines Calculation

Violations of 40 U.S.C. 5104(e)(2)(D), Violent Entry And Disorderly Conduct On Capitol Grounds, Disorderly Conduct in a Capitol Building; and 40 U.S.C. §5104(e)(2)(G), Parading, Demonstrating, or Picketing in a Capitol

Building are both Class "B" misdemeanor, therefore, the Sentencing Guidelines do not apply.

  II.  <u>The Offense Conduct</u>.

  The parties entered into an agreed upon "Statement of Offense" as part of the plea agreement.  The Probation Officer has accurately set forth the relevant facts in the Presentence Report.

  III.  <u>Sentencing Factors Under Sec. 3553(a)</u>

  Pursuant to 18 U.S.C. § 3553(a), several factors are to be considered by the Court in formulating an appropriate sentence in this case.

    1.  Nature and circumstances of the offense and the history and <u>personal characteristics of the defendant</u>.

    a. <u>The Nature and Circumstances of the Offense</u>.

  For the most part, the events of the day on January 6 are not in dispute and need not be recounted here.  As Judges in this District have recognized after studying the events of January 6 in great detail, the crowd at the Capitol that day can be generally categorized as having three primary constituent parts:

  1)  A relatively small group of individuals who came to the Capitol for the purpose and with the intent to engage in violence with the goal of disrupting the Congress's certification of the 2020 Electoral Vote.

  2)  A larger number of protesters who intended to protest in a loud and raucous manner as a manifestation of their unhappiness and distrust with regard to the outcome of the election -- but with no predetermined intention of engaging in violence – some of whom were drawn into committing acts of violence once there; and

3) an even larger group who remained as spectators to what developed into a riot by members of the first two groups.  Some members of this third group entered the Capitol building, walked around, and then exited without incident.  Defendant Von Keudell is squarely within this third group.

On the evening of January 5th, 2020, Defendant Von Keudell was invited by a family member to go to Washington D.C. to attend the planned political rally where former President Trump was expected to give a speech. Defendant Von Keudell initially had some reservations about going but decided to join his family because it had been many years since he had been to the capital, and he also had never heard any president speak at a live event. The night of January 5, Mr. Von Keudell, along with his mother and aunt, drove through the night for approximately 12 hours from Chicago to Washington D.C., arriving late at night on January 5th.  The family stayed in an Airbnb rental that night.

On January 6, Defendant Von Keudell and his family followed their plan and went to the location where they understood former President Trump would be speaking later that day.  They were present at that location for approximately two hours and listened to speech given by former President Trump.  When the speech ended, they heard talk among the crowd that the certification of the election was underway at the Capitol, so Defendant Von Keudell and his family followed the crowd  and walked to the Capitol building. While approaching the steps leading up to the Capitol, Defendant Von Keudell began to sense things were getting out of control but continued on out of curiosity.

When they reached a doorway entrance, Defendant Von Keudell and his family became part of the crowd that was being pushed from behind to continue to forward.  Just before actually entering the building, Defendant Von Keudell told his mother and aunt that if something were to happen, that they should meet back at the same location where they entered.

Immediately upon entering the building Defendant Von Keudell became separated from his mother and aunt after losing sight of them.  At that point his concern while inside the building was their safety and finding them again. Not knowing what direction the crowd had taken them, he decided to walk down a long hallway that led him to the Great Rotunda.

Defendant Von Keudell could see an elevator, and that members of the crowd were using it to go to other floors of the building.  He followed others into the elevator and then exited at a location in the building where the crowd was smaller and decided to turn around and reenter the elevator. Defendant Von Keudell took the elevator back down to the level of the Rotunda and decided it to return to the location where he and his relatives have entered as they had planned if they were separated.  He could smell tear gas in the air and the situation inside the building seemed to be deteriorating.  Defendant Von Keudell returned to the door where they had entered the building.  Defendant Von Keudell was in the immediate vicinity of several uniformed police officers for 30-45 minutes before he saw his mother and aunt exit the building. Defendant Von Keudell had tried numerous times while waiting to contact them using his cellular telephone, but continually encountered technical issues in getting the messages were going through.

Defendant Von Keudell and his family remained on the grassy area outside the building for a period of time while considering their options on whether to spend another night or to return immediately to Chicago.  Before coming to a firm decision the police began pushing the crowd in an apparent effort to direct them to leave the Capitol grounds.  Defendant Von Keudell and his family departed by walking around the building and back to their Airbnb. Once at the Airbnb, they packed their belongings and left Washington D.C.

b.  History and Personal Characteristics.

Defendant Von Keudell was born in Downers Grove Illinois on September 25th 1996. He lived in Elmhurst, Illinois up to age 3 when his parents divorced. After the divorce, his mother moved he and his brother out to Coal City, Illinois, where they lived before moving to Chicago. Defendant Von Keudell went to grade school in the south side of Chicago in a neighborhood called Bridgeport. At the age of 10 he moved to Brookfield, Illinois. Defendant Von Keudell attended public middle school and high school at Lyons Township in Lagrange Illinois.  While in high school he competed in track and field for two years and completed his open water scuba certification.

Defendant Von Keudell had a many close friends and a supportive family. Growing up in a split household was a challenge that created some trust issues. His parents did not have the acrimony-free divorce, and there were often tensions when there in attendance at the same event. Despite that, he had a good relationship with both his mother and father.  Even though he lived with his mother, his father was only an hour away, allowing him and his brother regular time with their father under the shared custody agreement.

As noted in the PSR, Defendant Von Keudell has no criminal history and has always been gainfully employed. He is a young man in the early stages of adulthood who is the first to admit that going into the Capitol building was a exercise of poor judgment under all the circumstances that were apparent to him. Once inside, and then separated from his mother and aunt, led him to the conclusion that he had made a bad choice and needed to return to the location where he had planned to meet his mother and aunt if they were seperated.

It is worth noting the time period involved and the location of Defendant Von Keudell's entry and exit.

He entered through the Senate Wing Door – the first access point by the crowd – at 2:24 p.m., approximately 11 minutes after the windows and doors at that location were first breached. This was also 2 minutes before any members of the U.S. Capitol Police arrived at this location and attempted to stem the flow if the crowd into the building.

He departed at 2:35, but remained in the area near the door looking for his mother an aunt. He saw many law enforcement officers in that location who were managing the crowd in a non-aggressive manner due to being vastly outnumbered. When his mother and aunt emerged from the building, the three departed together.

There was no physical violence between the police and rioters at this location during this time period. Defendant Von Keudell did not witness any such incidents and he certainly was not part of any such incidents.

> 2. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just

> punishment for the offense, to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other <u>correctional treatment in the most effective manner</u>.

This Court, as a matter of justice and equity, should treat Defendant Von Keudell no different than other misdemeanant offenders convicted for their involvement in the events  at the Capitol on January 6.

Defendant Von Keudell's involvement was limited to entering the building at a location and under circumstances that should have caused him better exercise his judgment.  He did not have express authorization to enter the building ,and his entry was lawful.  But it did not take long for him to realize his mistake, and but for the need to find his relatives he would likely have departed the Capitol grounds much sooner than he did.

Defendant Von Keudell engaged in no acts of violence.  He did not engage with any law enforcement officers, and he did not engage in any destruction of property.

Given Defendant Von Keudell's actual conduct on January 6, the sentence of probation recommended by the Probation Officer is the most appropriat response from this Court to address the nature of the criminal acts which he has admitted.  Custodial time in any amount is unnecessarily punitive, particularly given that he has never been engaged in the criminal justice process.

Other Judges of this Court have acknowledged that such sentences are appropriate in substantially similar cases where the defendant is a first-time violator and there are no aggravating factors in the defendant's conduct on

January 6.  *United States v. Wiesmar*, 21-cr-00592-1, *United States v.*

*Frankowski*, 21-cr-00592-2*, United States v. Cronin*, 21-cr- 00233. In each of

those cases, the Government asked for a term of incarceration, but the Court

determined that such a sentence was not warranted by the facts and that a

sentence of probation was sufficient to accomplish the Sec. 3553(a) policy

goals.

The Defendants in <u>Wiesmar</u> and <u>Frankowski</u> are similar to Defendant

Von Keudell – but each did more than Von Keudell while inside the Capitol.

They entered the Capitol building following the crowd just as Defendant Von

Keudell, but then traveled to different locations while inside the building and

spent more time inside. <u>Wiesemar</u> and <u>Frankowski</u> entered Senate offices and

spent several minutes inside. Similar to Mr. Von Keudell, they caused no

damage to the building nor engaged in any violence.

*Cronin* is also similarly situated to Mr. Von Keudell. He entered the

building, met up with his codefendants and the group made its way towards

the Senate. After being in the building for a short time, Cronin exited the

building on the same route he entered. After entering Cronin spent some time

traveling through the halls before exiting the building causing no damage nor

engaging in violence.

Further, this Court should also recognize the sentence handed down by

District Judge Mehta in *United States v. Greene*, 21-cr-00028. Defendant

Greene went to trial, was acquitted of four felonies, but was found guilty by a

jury on a Class "A" misdemeanor – he did not plead guilty and maintained his

innocence even at sentencing. Nevertheless, Judge Mehta found it proper to

sentence Greene to only two years of probation based on the totality of the evidence heard at trial.

But the two cases closest in circumstances to Mr. Von Keudell are the sentences imposed by this Court on his mother and aunt in *United States v. Trudy Castle* and *United States v. Kimberly DiFrancesco*, 22-cr-00261.  Both were sentenced to 30 months of probation – the remained inside the Capitol for a period significantly longer than did Mr. Von Keudell.

DEFENDANT'S SENTENCING RECOMMENDATION

Based on specific offense conduct here, and taking into consideration all the factors set forth by Congress in Section 3553(a), a sentence of two years of probation for Defendant Nicholas Von Keudell accomplishes the purposes of Section 3553(a) and is a sentence that adequately addresses the seriousness of the offense involved, and promotes future respect for and adherence to the law not only by them but by the public at large as well.

Dated: March 26, 2024               Respectfully submitted,

/s/ William L. Shipley
William L. Shipley, Jr., Esq.
PO BOX 745
Kailua, Hawaii 96734
Tel: (808) 228-1341
Email: 808Shipleylaw@gmail.com