**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 23-CR-221 (CRC)** |
| **v.** | : | |
| | : | |
| **NICHOLAS "NICK" VON KEUDELL,** | : | |
| | : | |
| **Defendant** | : | |

<u>**GOVERNMENT'S SENTENCING MEMORANDUM**</u>

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. Nicholas Von Keudell has pleaded guilty to two Class B misdemeanors, a violation of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) (Count Three) and a violation of 40 U.S.C. § 5104(e)(2)(G), (parading, demonstrating, or picketing in any Capitol building) (Count Four). For the reasons set forth herein, the government requests that this Court sentence Von Keudell to 30 days incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution.

**I.      Introduction**

Defendant Nicholas Von Keudell, a 27 year old dock manager from Indiana, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred

police officers, and resulted in more than 2.9 million dollars in losses.[1]

The government's recommendation is appropriate in this case because Von Keudell: (1) saw chaos outside before entering the Capitol building; (2) entered the Capitol through the Senate Wing Door only minutes after the first violent breach of the Capitol building; (3) took photos and videos inside and around the Capitol while the alarms were ringing; (4) exited the Capitol through a shattered window; and (5) after leaving the Capitol building, Von Keudell stayed on the restricted grounds for over an hour.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of Von Keudell's crime support a sentence of 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution in this case.

## II.    Factual and Procedural Background

### *The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF 20 at 1-4.

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendant's Von Keudell Role in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Von Keudell traveled to Washington, D.C., from his home in Illinois to attend the "Stop the Steal" rally. Von Keudell's aunt and mother also traveled with him.[2] The purpose of their trip was to protest Congress' certification of the Electoral College. *See* ECF 22 at ¶ 8. On January 6, 2021, Von Keudell and his family members walked with other protestors from the rally to the U.S. Capitol. They approached the building from the west side, and at approximately 2:19 p.m., made their way to the Upper West Terrace, part of the restricted area of the Capitol. During this time on the West Front, the mob began to push barricades back and confront the police line trying to prevent rioters from entering the Capitol building. At around 2:24 p.m., Von Keudell entered the Capitol building though the Senate Wing Door, which had first been breached by rioters breaking the window adjacent to the door, roughly 10 minutes before he entered.[3] As he entered, and the sound of the building's alarms rang through the building.[4] The defendant wore a blue and white striped beanie hat, a dark colored hooded sweatshirt underneath a dark-colored jacket, dark-colored pants, sneakers, dark-colored gloves, and carried a dark-colored bag around the front of his body, and a fold-up chair around his neck. Von Keudell can be seen with a phone in his hand, appearing to take pictures upon entering the Senate Wing Door. *See* Images 1-2.

---

[2] Von Keudell's aunt is Kimberly DiFrancesco and his mother is Trudy Castle. Both defendants were sentenced on November 22, 2022. *See United States v. Trudy Castle and Kimberly DiFrancesco*, 21-cr-261 (CRC).

[3] Attached please find a video labeled "Exh 1 – ProPublica," which depicts what occurred minutes before defendants entered the Senate Wing door and the sounds coming from the Senate Wing Door once breached by rioters.

[4] Attached please find a video labeled, "Exh 2 – Senate Wing Door," depicting Von Keudell walking into the Capitol through the Senate Wing Door at approximately 2:24:52 p.m



*Image 1 – Still Image of Von Keudell Entering the Capitol at approximately 2:24 p.m.*



*Image 2 – Still Image of Von Keudell on Restricted Capitol Grounds*

Once inside, Von Keudell separated from his mother and aunt. With a phone and what appeared to be a go pro device in his hand, Von Keudell walked near the vicinity of room S-146A before traveling into, around and back out of the Crypt, and then exited the U.S. Capitol through a shattered window on the south side of the West Senate Wing Door. *See* Images 3-5. Even though there is an exit and other rioters exiting behind him, Von Keudell walked further into the Capitol near room S-146. *See* Image 3. While inside the Crypt, Von Keudell stood on top of bench and

appeared to be recording the riot as it unfolded before him. *See* Image 3. Just minutes before Von

Keudell entered the Crypt, police officers retreated into the Crypt due to the strength of the mob.

These officers were so massively outnumbered by the rioters they are barely visible in the Crypt

at the time Von Keudell entered. Von Keudell was one of those rioters present. *See* Image 4.



*Image 3 – Still Image of Von Keudell near room S-146A*



*Image 4 – Still Image of CCTV of Von Keudell Inside the Crypt[5]*

---

[5] Attached please find a video labeled "Exh 5 – Crypt" depicting Von Keudell enter the Crypt, stand on the bench, and proceed to record the riot in front of him.



*Image 5 – Still Image of CCTV – Von Keudell Exiting the Capitol Through A Window Near the Senate Wing Doors at Approximately 2:35 pm*

After Von Keudell exited the building, he remained on the restricted grounds for over an hour. During this time Von Keudell was able to meet back up with his mother and aunt. He sat in a chair near the Northwest Courtyard, and watched the riot continue. *See* Image 6. Behind him was a line of MPD Officers trying to prevent rioters from further breaching the Capitol. Although he observed them, Von Keudell continued to watch rioters chant "USA" and remain on the restricted grounds. Around approximately 3:49 p.m. a rioter's voice on a megaphone yells "do not retreat, move forward." Soon after, Von Keudell stood up, took his chair, and joined other rioters as they approached the Senate Wing Door.[6] Von Keudell and his family members did not reenter. *See* Image 7. At approximately 4:21 p.m., Von Keudell and his family walked away from the Senate Wing Door area.

---

[6] Attached please find a video labeled, "Exh 3 – BWC," depicting Von Keudell sitting outside of the Capitol building and approaching the Senate Wing Door for the second time.



*Image 7 – Still Image from BWC – Von Keudell and his Family sit on Lawn Chairs on Restricted Grounds*



*Image 8 – Still Image from BWC – Von Keudell and his Family Approach the SWD After Exiting*

*The Charges and Plea Agreement*

On June 6, 2023, the United States charged Von Keudell by a four-count Information with violating 18 U.S.C. § 1752(a)(1) and (2) and 40 U.S.C. § 5104(e)(2)(D) and (G). On December 13, 2023, pursuant to a plea agreement, Von Keudell pleaded guilty to Counts Three and Four of the Information, charging him with a violation of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By plea agreement, Von Keudell agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Von Keudell now faces a sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreement and the U.S. Probation Office, the defendant faces up to six months of imprisonment and a fine of up to $5,000. The defendant must also pay restitution under the terms of his plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As this offense is a Class B Misdemeanor, the Sentencing Guidelines do not apply to it. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States*

*v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing Von Keudell's participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for a misdemeanor defendant like Von Keudell, the absence of violent or destructive acts is not a mitigating factor. Had Von Keudell engaged in such conduct, he would have faced additional criminal charges.

One of the most important factors in Von Keudell's case was his treatment of the attack on the Capitol as a spectacle Von Keudell observed many warning signs that he was not permitted to be on Capitol grounds, including broken windows and the ringing of alarm bells. Von Keudell ignored all these warning signs, and after leaving the Capitol building, he pulled up a lawn chair to watch the violence further unfold for nearly an hour. Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of 30 days' incarceration in this matter.

### B.  Von Keudell's History and Characteristics

As set forth in the PSR, Von Keudell does not have a criminal history and he has been complaint with the conditions of his pretrial release. ECF 22 at ¶¶ 23-26, 6. The PSR does not list any health problems, substance abuse or mental illness. ECF 22 at  ¶¶ 33-38. Prior to January 6, Von Keudell graduated from Illinois State University and he currently works as a dock manager for a property management company. ECF 22 at ¶ 29, 41.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a

political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

 The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to this particular defendant also weighs heavily in favor of a lengthy term of incarceration.

Von Keudell's actions on January 6, 2021, indicate the need for a sentence that provides specific deterrence. Von Keudell and his family did not accept the results of the 2020 presidential

election, so on January 6 they went to Washington D.C., invaded the Capitol, and stayed on Capitol grounds to watch other rioters continue their violent rampage. In his entry into the Capitol building, Von Keudell walked past police officers and shattered glass, and spent 10 minutes inside traveling to various locations throughout the building while taking photos and videos. After leaving the building, he pulled up a lawn chair to watch the violence further unfold. This behavior shows his conduct was not a momentary lapse in judgement, but instead a willful and alarming disregard of the chaos and violence that surrounded him.[7] Von Keudell's reckless decisions that day makes it clear that a sentence involving incarceration is needed to successfully deter Von Keudell from such thoughtless behavior in the future.

With the 2024 presidential election approaching and many loud voices in the media and online continuing to sow discord and distrust, the potential for a repeat of January 6 looms ominously. The Court must sentence Von Keudell in a manner sufficient to deter him, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers, to conspiracy to corruptly interfere with Congress.[8] This Court must sentence Von Keudell based on his own conduct and relevant characteristics, but

---

[7] Attached please find a video labeled, "Exh 4 – Outside SWD," depicting Von Keudell outside the SWD as the alarms go off and the rioters chant.

[8] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

should give substantial weight to the context of his unlawful conduct: his participation in the January 6 riot.

Von Keudell has pleaded guilty to Counts Three and Four of the Information, charging him with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the sentences in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, other judges of this court have sentenced Capitol breach defendants who witnessed violence and/or chaos before entering the Capitol building, who entered the Capitol through locations where there was obvious damage (including shattered glass), such as the Senate Wing Door; or who spent significant time inside the Capitol and took photos and videos while inside. An unauthorized individual inside the Capitol for a longer period of time poses a greater threat and creates a greater impediment to members of Congress and staffers just trying to do their jobs than would a trespasser walking out immediately.

In *United States v. Castle et al.*, 22-cr-261, Von Keudell's aunt and mother each pled guilty to a single misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G). Castle and DiFrancesco traveled with Von Keudell to Washington D.C., went to the rally together, walked together to the Capitol, and sat on the restricted grounds together after exiting. In an interview with the FBI, Castle also admitted to providing Von Keudell with a walkie talkie so they could speak while at the Capitol. While Castle and DiFrancesco were separated from Von Keudell and spent nearly forty minutes inside the Capitol building, they all took photos and videos inside the Capitol, they reunited outside of the building, they watched the riot unfold together, and reapproached the building together. The government submits that their conduct is similar  in nature and is therefore recommending the same sentence as it recommended in *Castle et al*.

In *United States v. Savannah McDonald*, 21-cr-00429, the defendant also pled guilty to a misdemeanor charge of 40 U.S.C. § 5104(e)(2)(G). Similar to the defendant here, McDonald spent time on the West Front of the Capitol grounds and observed chaos before entering the Capitol building; entered near the Senate Wing Door (through the Senate Fire Door which had been opened shortly before by two rioters who had entered through the Senate Wing Door); took and sent videos on January 6th through their Snapchat account. This Court imposed a sentence of 21 days' incarceration in that case.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its

own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[9] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Von Keudell must pay $500 in restitution, which reflects in part the role Von Keudell played in the riot on January 6.[10] Plea Agreement at ¶ 11. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages

---

[9] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[10] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

has since been updated by the Architect of the Capitol, USCP, and MPD.) Von Keudell's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 20.

## VI.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Von Keudell to 30 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community service, and $500 in restitution in this case. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Von Keudell's liberty as a consequence of his behavior, while recognizing his acceptance of responsibility for his crime.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY

BY:    Nialah S. Ferrer
Nialah S. Ferrer
Assistant United States Attorney
New York Bar No. 5748462
601 D Street, NW
Washington, D.C. 20530
(202) 557-1490
Nialah.Ferrer@usdoj.gov